STATE OF CONNECTICUT *v.* JOHN SANTIAGO
(9582)

DUPONT, C. J., NORCOTT and HEIMAN, JS.

Argued September 19, 1991—decision released January 28, 1992

*William T. Koch, Jr.,* special public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, *Peter McShane,* deputy assistant state's attorney, and *Kathryn St. Amand,* law student intern, for the appellee (state).

DUPONT, C. J. The sole issue of this appeal is whether the defendant's warrantless arrest, for the misdemeanor of threatening in violation of General Statutes § 53a-62, was prohibited by the fourth amendment to the United States constitution.[1] The resolution of this issue requires an analysis of whether the arrest occurred in or out of the defendant's home.[2]

The charge of threatening, which was the subject of the warrantless arrest, was not prosecuted. The trial

---

[1] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] If the arrest occurred outside of the home, the arrest would be valid under the fourth amendment because it is correctly conceded by the defendant that there was probable cause for it. *United States* v. *Watson,* 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976); *Dorman* v. *United States,* 435 F.2d 385 (D.C. Cir. 1970).

court found that the warrantless arrest was legal because it was based on speedy information[3] and there was probable cause for the arrest. The court, therefore, denied the defendant's motion to suppress the evidence of a pipe containing narcotics residue found in a search of the defendant's person shortly after the arrest.[4] The defendant then pleaded nolo contendere to the crimes of possession of drug paraphernalia and possession of narcotics conditional on the right to appeal from the denial of his motion.[5]

The facts as found by the trial court, and as stated by the parties, are not in dispute. The police were sent to the defendant's home in March, 1989, in response to a report that he had threatened a neighbor with a handgun. After interviewing the neighbor and another person, an officer went onto a concrete covered porch, measuring approximately ten feet by four feet, leading directly to the doorway of the defendant's basement

[3] General Statutes § 54-1f (a) authorizes misdemeanor arrests without a warrant "when the person is taken or apprehended in the act or on the speedy information of others . . . ." General Statutes § 54-1f (b) governs warrantless arrests for felonies.

[4] The record does not indicate whether the defendant was searched inside his apartment, on his porch, or at police headquarters. If the defendant were searched inside his home or its curtilage as defined in this decision, the evidence would need to be suppressed under the exclusionary rule as violative of the fourth amendment. *Payton* v. *New York*, 445 U.S. 573, 110 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); see *New York* v. *Harris*, 495 U.S. 14, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990). If the defendant were searched at a place other than his home or its curtilage, the evidence would also require suppression under our state exclusionary rule as derived from article first, § 7, of the Connecticut constitution, because the taint resulting from the violation was not sufficiently attenuated from the initial entry into the home. *State* v. *Geisler*, 25 Conn. App. 282, 594 A.2d 985, cert. granted, 220 Conn. 918, 597 A.2d 342 (1991).

[5] General Statutes § 54-94a provides that a defendant may enter "a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure" and after the imposition of sentence may appeal the issue of "whether it was proper for the court to have denied the motion to suppress . . . ."

apartment. The porch does not lead to any other apartment and the first floor apartment forms its roof. In response to the officer's knock on the door, the defendant, bare chested and shoeless, opened the door and spoke to the officer, denying that he had threatened the neighbor. He refused to allow the officer to enter his apartment to search for a handgun without a search warrant. The officer ordered the defendant to remain in the doorway and then left the porch to speak with another officer. Subsequently, the officer returned to the porch and arrested the defendant, who was still standing in the doorway, for threatening the complainant. The officer stretched his arm beyond the plane of the threshold to seize the defendant, who had begun to retreat into his apartment, and effectuated the arrest. The officer's feet were never inside the defendant's apartment.

*United States* v. *Santana,* 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976), and *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), are the two cases relied on in decisions that discuss the prohibitions of the fourth amendment when there has been a warrantless arrest in a home or an "almost-home" location.

In *United States* v. *Santana,* supra, the Supreme Court of the United States upheld a warrantless entry by the police that passed beyond the threshold of the defendant's home. The entry was made to effectuate a warrantless arrest for a felony drug charge. The defendant's exact position when she was first seen by the police was described in precise detail in footnote one of the decision. If she had taken one step forward, she would have been outside her home and with one step backward, she would have been in the vestibule of her residence. When she saw the officers approach, she retreated into her home and was seized and arrested within its vestibule. The court concluded that

the threshold of her dwelling was a public place in which she had no privacy interest and that her retreat into her dwelling could not thwart an otherwise proper arrest. Id., 42. The trial court, in its oral decision, alluded to the *Santana* case when it determined that 'the issue of the threshold is a bogus one''

In *Payton* v. *New York,* supra, the court held that even where there is probable cause to arrest a suspect for a felony, an officer may not enter a suspect's home to effectuate that arrest absent exigent circumstances. The court stated that "[t]he Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined then when bounded by the unambiguous physical dimensions of an individual's home . . . . In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id., 589–90. (Citations omitted; internal quotation marks omitted.)

A warrantless arrest, whether for a misdemeanor or a felony, requires that the arrest be supported by probable cause. *State* v. *Kaplan,* 20 Conn. App. 183, 186, 565 A.2d 11 (1989). Even where there is probable cause for a warrantless arrest, however, a warrantless entry into the home to arrest for a felony must survive the test of exigent circumstances. *State* v. *Guertin,* 190 Conn. 440, 446–55, 461 A.2d 963 (1983). The trial court in the present case did not determine whether exigent circumstances as such existed. The court, however, concluded that the warrantless arrest was permissible under General Statutes § 54-1f (a) because it was based on the "speedy information of others" and implicitly concluded that the arrest occurred in a public place.[6]

---

[6] We do not need to reach the question of whether, based on the factual circumstances known to the arresting officer, the warrantless arrest would

The defendant contends that whether exigent circumstances existed is irrelevant because his home could not be invaded to effect an arrest for a misdemeanor without violating the fourth amendment to the United States constitution. The state concedes that there were no exigent circumstances, but argues that *Santana* permits a warrantless arrest for a misdemeanor when the location of the arrest is the doorway of the defendant's home. Thus, this case depends on whether the definition of home includes the porch leading to the defendant's apartment. We must decide whether the defendant was arrested without a warrant in a public place or in an area that intruded into the privacy of his home. Neither the Connecticut Supreme Court or the Supreme Court of the United States has yet decided if fourth amendment protection should be accorded to an area such as a porch, attached to a home, in which a suspect has exclusive possession. This case, then, provides another example of the continuing problem of reconciling a warrantless arrest with the constitution. See note, "Warrantless Doorway Arrests—Preemption of *Payton* v. *New York,*" 6 Hamline L. Rev. 585 (1983).

Exigent circumstances form an exception to the general rule that a warrantless entry into a dwelling may not be made for the purpose of making an arrest for the commission of a felony. "[C]ourts have permitted warrantless home arrests for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the arrest. . . . But of those courts addressing the issue, most have refused to permit warrantless home arrests for nonfelonious crimes. See, e.g., *State* v. *Guertin,* 190 Conn. 440, 453, 461 A.2d 963, 970 (1983)." *Welsh* v. *Wisconsin,* 466 U.S. 740, 752, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).

have been upheld under General Statutes § 54-1f (a) had it been made in a public place. See *Clark* v. *Muzio,* 40 Conn. Sup. 512, 516 A.2d 160 (1980); *State* v. *Anonymous (1981-1),* 37 Conn. Sup. 755, 436 A.2d 789 (1981).

"The exception [of exigent circumstances for the making of an arrest without a warrant] is limited to the investigation of serious crimes; misdemeanors are excluded." *State* v. *Guertin,* supra, 453. Although a violation of General Statutes § 53a-62 is a misdemeanor, its investigation may have been considered by the police as an investigation of a serious crime because of the alleged use of a gun. Because the state conceded a lack of exigent circumstances, we need not determine if the police were investigating a crime in the category of a misdemeanor or a felony, or if the concession itself was correct. We need only determine if the defendant had a legitimate expectation of privacy that society should protect in the location of his arrest.

Ever since the decision in *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), the " 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the [Fourth] Amendment has a legitimate expectation of privacy in the invaded place.' " *Minnesota* v. *Olson,* 495 U.S. 91, 110 S. Ct. 1684, 1687, 109 L. Ed. 2d 85 (1990), quoting *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). A legitimate, subjective expectation of privacy is "one that society is prepared to recognize as reasonable." *Katz* v. *United States,* supra, 361 (Harlan, J., concurring).

*United States* v. *Santana,* supra, concerned a suspect's expectation of privacy while standing on the threshold of a doorway leading into her home, and concluded that there was no such expectation that society was prepared to recognize. A number of cases have discussed variations of the *Santana* theme, such as "on," "over," "in," "upon" or "at" the threshold. See *People* v. *Burns,* 200 Colo. 387, 615 P.2d 686 (1980); *People* v. *Schreiber,* 104 Ill. App. 3d 618, 432 N.E.2d 1316 (1982); *State* v. *Patricelli,* 324 N.W.2d 351 (Minn.

1982); *State* v. *George,* 210 Neb. 786, 317 N.W.2d 76 (1982); see also W. LaFave, Search and Seizure (2d Ed.) 6.1 (e), pp. 587–93. We need not join them because we hold that the defendant was standing in an area in which he had an expectation of privacy, as opposed to the public threshold of his home, at the time of his arrest.[7]

The United States Supreme Court has recognized that the home deserves scrupulous protection from government invasion. *Payton* v. *New York,* supra. The problem is that the boundaries of a home are not always clearly defined or unambiguous. See *State* v. *Mooney,* 218 Conn. 85, 93, 588 A.2d 145, cert. denied,     U.S.     , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The test to determine whether the porch in this case was an area intricately bound to the home itself revolves around whether that porch is part of the curtilage, that is the land immediately surrounding and associated with the home. *Oliver* v. *United States,* 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).

---

[7] There are some decisions holding that although a defendant was standing in or on the threshold of his home, an area not ordinarily protected by an expectation of privacy, as discussed in *United States* v. *Santana,* 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976), fourth amendment protection should nevertheless be accorded to him if his presence there was procured by the knock of the police on the door of his home, even if there is probable cause for the arrest, absent exigent circumstances. *Duncan* v. *Storie,* 869 F.2d 1100 (8th Cir.), cert. denied, 493 U.S. 852, 110 S. Ct. 152, 107 L. Ed. 2d 110 (1989); *United States* v. *Crespo,* 834 F.2d 267 (2d Cir.), cert. denied, 485 U.S. 1007, 108 S. Ct. 1471, 99 L. Ed. 2d 700 (1987); *State* v. *Morse,* 125 N.H. 403, 480 A.2d 183 (1984). One court has reasoned that if a suspect appears at the door of his home because of some act of the police, there has been a constructive entry of the home that would bar a warrantless arrest under the fourth amendment even if probable cause exists, absent exigent circumstances. *United States* v. *Al-Azzawy,* 784 F.2d 890 (9th Cir. 1985). These cases do not use the traditional analysis of "expectation of privacy" in a particular area as expounded by the Supreme Court of the United States. Instead, they analyze the facts in terms of whether the police were in "hot pursuit" of a suspect outside of the home as the police approached or, whether the suspect was in the home when summoned to the doorway by the police.

"At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life' . . . and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." (Citations omitted.) *Oliver* v. *United States,* supra, 180.

The case of *United States* v. *Dunn,* 480 U.S. 294, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987), amplified the *Oliver* decision and further defined a home's curtilage. The *Dunn* court determined that curtilage questions "should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States* v. *Dunn,* supra, 301; *State* v. *Lipak,* 21 Conn. App. 248, 256, 573 A.2d 323 (1990).

A sheltered porch, attached to a home, is an area intimately tied to the home itself, and an area in which domestic activity commonly occurs. A porch is intrinsically associated with both the sanctity of the home and the privacies of life. See *Oliver* v. *United States,* supra, 180; *Boyd* v. *United States,* 116 U.S. 616, 630, 6 S. Ct. 524, 29 L. Ed. 746 (1886). We hold that the defendant's porch, in which he had exclusive possession, is as sacrosanct as the home itself for fourth

amendment purposes.[8] Other courts have similarly held that certain areas attached to the home are to be treated as though they are a part of the home. See *United States* v. *Karagozian,* 715 F. Sup. 1160 (D. Conn. 1989), aff'd, 914 F.2d 239 (1990) (back deck); *Brown* v. *State,* 392 So. 2d 280 (Fla. Dist. Ct. App. 1980), cert. denied, 454 U.S. 819, 102 S. Ct. 98, 70 L. Ed. 2d 89 (1981) (small back porch). Because we conclude that the defendant's home included his porch, his warrantless arrest there was violative of the fourth amendment.

The judgment denying the defendant's motion to suppress the evidence seized is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

---

[8] We do not include in the definition of home, for the purposes of the fourth amendment, a porch that is shared with others. See *United States* v. *Holland,* 755 F.2d 253 (2d Cir.), cert. denied, 471 U.S. 1125, 105 S. Ct. 2657, 86 L. Ed. 2d 274 (1985).