STATE OF CONNECTICUT *v.* PAUL DeFUSCO
(10255)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued January 8—decision released March 31, 1992

*John R. Donovan,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom were *Lisa A. Riggione,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, and *Susan C. Marks,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant challenges the trial court's denial of his motion to suppress evidence seized pursuant to a search warrant. Specifically, the defend-

ant claims that the affidavit used to secure the warrant authorizing a search of his residence did not establish the requisite probable cause to justify the issuance of the search warrant. As part of this claim, the defendant contends that the warrant affidavit improperly relied on items seized from his garbage. The basic issue of this appeal is whether the Connecticut constitution prohibits a warrantless seizure and search of garbage left outside the curtilage of a defendant's residence. Because we hold that article first, § 7, of the Connecticut constitution, like the fourth amendment to the United States constitution, does not prohibit the warrantless search and seizure of garbage left at the curbside for collection and disposal by waste removal personnel, we conclude that the trial court properly determined that the search warrant was supported by probable cause. We, therefore, affirm the judgment of the trial court.

On October 12, 1990, the Hamden police executed a search warrant for 19 Building Brook Road, the residence of the defendant and his wife. In the course of their search, the police seized narcotics, drug paraphernalia, weapons and cash. The defendant was then arrested and charged with various narcotics offenses.

The warrant authorizing the search was based on the affidavit of two members of the Hamden police department who had experience in conducting narcotic investigations that led to arrests and convictions. It stated that on August 15, 1990, Investigator Charles Grady received information from a "known and reliable informant" who had been used numerous times for various narcotics cases, alleging that the defendant, a resident of 19 Building Brook Road in Hamden, was selling ounce quantities of cocaine from his residence and sold one half of a kilo every two weeks. The informant related, according to the affiant, that the defendant was a construction foreman and supplemented his income

from sales of cocaine. The informant described the vehicles owned by the defendant. The informant also described the person from whom the defendant allegedly received his cocaine and how the two of them obtained the cocaine from two Hispanic males. Checking Hamden police records, the affiants found that there had been an anonymous complaint in 1988 that the defendant was selling ounce quantities of cocaine from his home on Building Brook Road.

On September 5, 1990, Grady conducted a "garbage pull"[1] from in front of the defendant's house. As a result of that garbage pull, two prescription bottles bearing the defendant's name and three small glassine bags, one of which was stamped "Bad Med," were found. The affiant stated that the glassine bags were the type used to package cocaine and heroin. Further, it was alleged that on September 26, 1990, a second garbage pull was made.[2] Among the contents of the garbage seized on September 26 was a prescription bottle bearing the defendant's name, several short cut straws, and two glassine bags of the type used to package cocaine and heroin. On September 27, 1990, the police again met with the confidential informant, who told them that the defendant had a longtime heroin addiction. The police checked with the department of motor vehicles and the telephone company to confirm that the defendant lived in the house in question.

[1] The garbage was taken by the Hamden police after it was put out for collection. The record does not establish the type of container in which the defendant's garbage was stored when it was put out for collection and then pulled. A solid waste ordinance adopted by the Hamden legislative council, however, requires storage of garbage in a closed, watertight container and provides that such containers may be placed at curbside no more than twenty-four hours prior to collection. The trial court relied on that local ordinance in determining the issues presented by this appeal. Neither party disputes the trial court's use of the ordinance in the court's analysis of the defendant's reasonable expectation of privacy in his garbage.

[2] The warrant affidavit also noted that garbage pulls were attempted on September 12 and 19, 1990, but that no garbage was placed outside on either date.

After the trial court denied his motion to suppress, the defendant entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a, to one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). He now appeals pursuant to § 54-94a and Practice Book § 4003, claiming that it was improper for the trial court to have denied the motion to suppress.

Article first, § 7, of our constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Like the fourth amendment to the United States constitution,[3] which it closely resembles, article first, § 7, safeguards the privacy, the personal security, and the property of the individual against unjustified intrusions by agents of the government. *State* v. *Barton,* 219 Conn. 529, 540, 594 A.2d 917 (1991).

"One of the principal means by which the warrant requirement protects the privacy and property of the individual is by the interposition of a neutral and detached magistrate who must judge independently the sufficiency of an affidavit supporting an application for a search warrant. Whether applying the fourth amendment or article first, § 7, of our own constitution, we have frequently recognized that a magistrate issuing a warrant cannot form an independent opinion as to the existence of probable cause unless the affidavit sup-

---

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

porting the warrant application sets forth some of the facts upon which the police have relied in concluding that a search is justified. . . . When a police officer seeking a search warrant relies on hearsay information supplied by confidential informants rather than on personal knowledge and observations, certain additional facts are necessary to ensure that the magistrate's decision to issue the warrant is informed and independent." Id., 540–42.

*State* v. *Barton,* supra, contains a reformulation of the standard to be applied by our courts in reviewing the sufficiency of a search warrant application based on information supplied to the police by a confidential informant. The *Barton* court concluded that "a 'totality of the circumstances' analysis of the probable cause requirement of article first, § 7, of our constitution means simply this: When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the

magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." Id., 544–45.

Applying the *Barton* analysis to the present case,[4] we agree with the trial court that the information supplied by the informant, standing alone, was insufficient to establish probable cause. Where the suspicions engendered by an informant's tip would not have independently justified the issuance of a warrant, however, "the magistrate was not required to disregard the tip altogether, but could consider whether the tip and the

---

[4] The trial court decided this case under *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). That case evaluated a warrant affidavit based on information obtained from a confidential informant as enunciated by the United States Supreme Court in *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Subsequently, *State* v. *Barton,* 219 Conn. 529, 533, 594 A.2d 917 (1991), held that the determination of probable cause as provided in article first, § 7, of our state constitution is to be made pursuant to the "totality of the circumstances" analysis used by the United States Supreme Court to determine probable cause under the fourth amendment to the federal constitution in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

The defendant conceded at oral argument that we must decide his appeal under *State* v. *Barton,* supra, notwithstanding the fact that *Kimbro* was controlling authority at the time of the challenged search. We agree that *Barton* has such retroactive effect. See *State* v. *Ryerson,* 201 Conn. 333, 340, 514 A.2d 337 (1986). In fact, in *Barton* itself, and in *State* v. *Johnson,* 219 Conn. 557, 594 A.2d 933 (1991), decided the same day as *Barton,* the new rule enunciated in the *Barton* decision to uphold search warrants was applied, although *Kimbro* had been the law at the time of the challenged searches. Moreover, this court has already "follow[ed] the lead of the Supreme Court in *Barton* and *Johnson* and review[ed] the warrant and accompanying affidavit under *Gates*" notwithstanding the fact that *Kimbro* was controlling authority at the time of the challenged search. *State* v. *Payne,* 25 Conn. App. 428, 432 n.2, 594 A.2d 1035, cert. denied, 220 Conn. 915, 597 A.2d 337 (1991); see also *State* v. *Anziano,* 26 Conn. App. 667, 672, 603 A.2d 415 (1992).

[information gathered by the independent police] investigation together 'bridged the gap' between mere suspicion and probable cause." *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991); *State* v. *Delmonaco,* 194 Conn. 331, 341, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984).

This brings us squarely to the issue of whether, consistent with article first, § 7, of our constitution, or the fourth amendment to the United States constitution, the police may search a person's garbage placed at the curbside for disposal. If not, items seized in the search cannot provide the basis for seeking a warrant or for the magistrate's determination that probable cause exists to issue a search warrant. See *Murray* v. *United States,* 487 U.S. 533, 542, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988); *State* v. *Ostroski,* 201 Conn. 534, 544–45, 518 A.2d 915 (1986). In the present case, without the corroborating information obtained from the garbage pulls, deficiencies in the warrant affidavit regarding the information supplied by the informant would prevent mere suspicion from ripening into a determination of probable cause.

In *California* v. *Greenwood,* 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), the United States Supreme Court determined that the fourth amendment to the United States constitution does not prohibit warrantless searches of garbage left outside the curtilage of a residence, namely, at the curb of a public street, for collection and disposal. The defendant, however, asks us to conclude that article first, § 7, of the Connecticut constitution mandates a different result under nearly identical facts.

Although individual states may construe their own constitutions as requiring greater restrictions on police behavior as to search and seizure than does the federal constitution; *State* v. *Marsala,* 216 Conn. 150, 579

A.2d 58 (1990); *State* v. *Geisler,* 25 Conn. App. 282, 594 A.2d 985, cert. granted, 220 Conn. 918, 597 A.2d 342 (1991); the individual constitutional concepts of privacy in the states do not supply the parameters of the fourth amendment to the United States constitution for use by the federal courts. *California* v. *Greenwood,* supra, 39. Thus, the federal courts are not bound to look to the states to determine or to follow what the states have done in interpreting their own constitutions that contain provisions similar to those of the federal government. Likewise, the state courts are not required to follow federal constitutional law when interpreting state constitutional provisions as long as they do not diminish the protection afforded by the federal constitution. Our question in this case is whether the Connecticut constitution prohibits the warrantless search and seizure of garbage left for collection outside the curtilage of a residence, but adjacent thereto.

The courts of Connecticut "have turned to our own constitution, when appropriate, to afford our citizens broader protection of certain personal rights than that afforded by similar or even identical provisions of the federal constitution. . . . In doing so, we acknowledge the concern for interaction between this court and the United States Supreme Court. Yet, in evaluating federal constitutional claims by a litigant, we stand on a different footing than when evaluating claims under our state constitution." (Citations omitted.) *State* v. *Dukes,* 209 Conn. 98, 112, 547 A.2d 10 (1988). In interpreting our state constitution, our courts are not bound to adopt the federal interpretation of consonant federal constitutional provisions. "Our system of federalism requires no less. But of even weightier concern is the authority of our state constitution, the fundamental charter of our state, and it is this court's duty to interpret and enforce our constitution. . . . Thus, in

a proper case 'the law of the land' may not, in state constitutional context, also be 'the law of the state of Connecticut.' " Id., 113–14.

This state's courts have deviated, on occasion, from federal law in cases involving the fourth amendment to the United States constitution in order to grant our citizens greater protection than that given by the federal constitution. Our courts have done so, for example, when our highest federal court has created exceptions to or deviated from rules previously enunciated by it. Connecticut's appellate courts have not been hesitant to continue to grant its citizens the same protection as did the "old" federal decisions, when the United States Supreme Court has retreated from a previously enunciated broad protection reading of the fourth amendment. See, e.g., *State* v. *Marsala,* supra; *State* v. *Geisler,* supra. Thus, in *State* v. *Marsala,* supra, our Supreme Court refused to follow *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and gave our citizens the protection of the exclusionary rule, under our constitution, undiluted by a good faith exception, as allowed in *Leon.* Until *Leon,* a broad exclusionary rule under the federal constitution had been a constant in fourth amendment analysis, having been first announced in *Weeks* v. *United States,* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), and made applicable to the states through the fourteenth amendment to the United States constitution in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). The *Marsala* court interpreted our state constitution to allow the maintenance of a constitutional status quo that had existed for our citizens for at least twenty-nine years.

In *State* v. *Geisler,* supra, this court refused to follow *New York* v. *Harris,*      U.S.     , 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990). *Harris* also created an exception to the exclusionary rule under the federal consti-

tution, and held that evidence obtained outside a residence, immediately following an illegal warrantless arrest made in the residence, was admissible at trial. Such evidence had been previously banned as violative of the fourth amendment. See *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Our conclusion in *Geisler* aligned our state constitutional protections with those protections long afforded by the federal constitution prior to *Harris* and followed by the courts of this state. See, e.g., *Brown* v. *Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). In *Geisler,* as the Supreme Court had done in *Marsala,* we read our state constitution to maintain the constitutional status quo ante, thereby permitting Connecticut's citizens and its courts to rely on privacy protections that had long been a part of our constitutional jurisprudence.

Our courts, however, have not yet extended state constitutional protections against unreasonable search and seizures beyond those protections delineated by well settled interpretations of the federal constitution. That is, our state constitution has not been interpreted to afford search and seizure protections not previously recognized under the federal constitution. See, e.g., *State* v. *Dukes,* supra. In that case, our Supreme Court concluded that the state constitution did not prohibit the search of a person and his automobile incident to his lawful custodial arrest. In doing so, the court interpreted our state constitution to provide no more protection against search and seizure than that previously determined to be provided by the federal constitution in *United States* v. *Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), and *Gustafson* v. *Florida,* 414 U.S. 260, 94 S. Ct. 488, 38 L. Ed. 2d 456 (1973), and *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

The issue of this case does not involve a dilution of a previously established federal constitutional right through the creation of an exception to a prior rule. The cases interpreting article first, § 7, have given due recognition to firmly established interpretations of the federal constitution, while at the same time protecting the reasonable reliance of Connecticut's citizens and courts on the long-standing protections previously afforded to them under the federal constitution. When the United States Supreme Court has interpreted the fourth amendment to diminish those protections that our citizens have come to expect, our courts have refused similarly to diminish those protections under our constitution.

The issue presented by *California* v. *Greenwood,* supra, was a first for the United States Supreme Court. No previous United States Supreme Court case had recognized an expectation of privacy in garbage that prohibited, because of the fourth amendment to the United States constitution, a warrantless search and seizure of it. Nor had the fourth amendment or our constitution been recognized by our appellate courts as affording such a right. *Greenwood* does not retreat from a previously recognized right afforded to the people of this state and, therefore, does not involve a case in which Connecticut citizens and courts had come to rely on a protected right no longer available under the federal constitution. Our comments as to *Greenwood* form a backdrop to our decision but are in no way decisive.

We now turn directly to the question of whether garbage found outside the curtilage of a home, in Connecticut, is to be afforded search and seizure protection under our state constitution. "Because the constitutional prohibition against unreasonable searches and seizures affords protection only against invasions of reasonable expectations of privacy . . . our threshold inquiry is whether the defendant in fact possessed

a reasonable expectation of privacy in the [garbage]. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications." (Citations omitted.) *State* v. *Brown,* 198 Conn. 348, 355, 503 A.2d 566 (1986).

The determination of whether a reasonable expectation of privacy exists is fact specific and requires a two part inquiry. The first inquiry is whether the individual has exhibited an actual subjective expectation of privacy, and the second one is whether that expectation is one that society is prepared to recognize as objectively reasonable. See *State* v. *Mooney,* 218 Conn. 85, 94, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The place searched is highly relevant to this analysis because expectations of privacy in some places are afforded greater constitutional legitimacy than in others. Id., 94–95; *State* v. *Brown,* supra, 356; *State* v. *Santiago,* 26 Conn. App. 481, 602 A.2d 40 (1992).

In no site is there an absolute federal or state constitutional protection of privacy; *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); but privacy expectations vary as does our societal interest in protecting that privacy, depending upon whether the area is a garage; *State* v. *Brown,* supra; an open field; *Oliver* v. *United States,* 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984); a car; *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, (1970); a closed container; *United States* v. *Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); a porch; *State* v. *Santiago,* supra; the interior of a home; *Payton* v. *New York,* supra; or the heat emanating from a garage in which it is suspected marihuana is being grown; *United States* v. *Penny-Feeney,* 773 F. Sup. 220 (D. Haw. 1991).

We agree with the defendant that many details of a person's otherwise private life can often be found in his or her garbage. "A single bag of trash testifies eloquently to the eating, reading, and recreational habits of the person who produced it. A search of trash, like a search of the bedroom, can relate intimate details about sexual practices, health, and personal hygiene. Like rifling through desk drawers or intercepting phone calls, rummaging through trash can divulge the target's financial and professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests." *California* v. *Greenwood,* supra, 50 (Brennan, J., dissenting). It is true that a sealed trash bag may harbor telling evidence of the intimate activity associated with the sanctity of the home and the privacies of life that our constitution is designed to protect. See id., 50–51. We do not believe, however, that the content of our trash is the relevant focus of our inquiry, but, rather, the site of its placement for disposal, and its accessibility to third persons because of that site. See *State* v. *Ronngren,* 361 N.W.2d 224 (N.D. 1985). In other words, the focus of any analysis is an owner's expectation of privacy and society's acceptance of that expectation as objectively reasonable. *State* v. *Mooney,* supra, 94.

We agree with the *Greenwood* majority that, notwithstanding the arguable privacy concerns that a person might ascribe to his garbage, the defendant here "placed [his] refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [the defendant's] trash or permitted others, such as the police, to do so. Accordingly, having deposited [his] garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' *United States* v. *Reicherter,* 647 F.2d 397, 399 ([3d Cir.] 1981), [the

defendant] could have had no reasonable expectation of privacy in the inculpatory items that [he] discarded." *California* v. *Greenwood,* supra, 40–41. In our view, this conclusion of the *Greenwood* court is but another application of the oft-repeated maxim of search and seizure law that "[w]hat a person knowingly exposes to the public . . . is not a subject of [constitutional] protection." *Katz* v. *United States,* 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

Moreover, property left in areas accessible to the public can lose the constitutional protection because it has been abandoned. Although the relevant inquiry in determining whether property has been abandoned in the constitutional sense focuses not on strict property law concepts but on "whether the defendant manifested by his conduct an intent to shed . . . his expectation of privacy in the item or container involved"; *State* v. *Mooney,* supra, 107; the defendant's proprietary interests regarding the property are nevertheless relevant to this inquiry.

It is often stated that "the proper 'test for abandonment in the search and seizure context is distinct from the property law notion of abandonment: it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object.' " Id., quoting *United States* v. *Thomas,* 864 F.2d 843, 845 (D.C. Cir. 1989). The act of leaving garbage at the curbside for disposal, however, necessarily casts the appropriate inquiry in a distinctly different way. The question here is whether a person can discard property in a public manner and therefore manifest an intention to relinquish all possessory or ownership interest in the item, but, nonetheless, retain a reasonable expectation of privacy in the object. The act of placing garbage at a curb of a public street for the purpose of permanent disposal by strangers manifests an intent to relinquish

ownership of the garbage, and such conduct is necessarily inconsistent with continued privacy expectations in the items contained therein. For this reason, we find the cases relied on by the defendant, which protect garbage placed outside the curtilage from warrantless searches under state constitutional analyses; *State* v. *Tanaka,* 67 Haw. 658, 701 P.2d 1274 (1985); *State* v. *Hempele,* 120 N.J. 182, 576 A.2d 793 (1990); *State* v. *Boland,* 115 Wash. 2d 571, 800 P.2d 1112 (1990); to be unpersuasive. We conclude that such property has been abandoned for purposes of constitutional search and seizure protections.

Because the defendant voluntarily left his garbage in a public place, under circumstances indicating that he never intended to see it again, he retained no reasonable expectation of privacy in it, and it lost any immunity from search and seizure that it may have had while within the curtilage of his residence. Article first, § 7, like the fourth amendment to the United States constitution, did not protect the defendant from a warrantless search of his garbage under those circumstances.

Because the warrantless search of the defendant's garbage was permissible, the evidence seized during that search could properly be used by the magistrate to determine whether the search warrant application established probable cause to search the defendant's residence. We must now determine whether, in light of all of the information contained in the search warrant affidavit, the warrant authorizing the search of the defendant's home was supported by probable cause.

Applying *State* v. *Barton,* supra, to the facts of this case; see footnote 4, supra; we conclude that the information contained in the warrant application, and all

reasonable inferences drawn from those facts, presented sufficient indicia of reliability to justify the issuance of a search warrant. Here, the police had information, both recent and from a previous time, suggesting that the defendant was involved in the sale of illegal narcotics. The reliability of that information was substantiated by items obtained from the garbage pulls, which items are commonly associated with illicit drug possession and sale. Moreover, "[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination. . . . The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed." (Citations omitted.) *State* v. *Johnson,* supra, 565. We, therefore, conclude that the facts set forth in the affidavit provided a substantial basis for the magistrate's conclusion that there was probable cause to believe that illegal drugs and drug paraphernalia would be found in the defendant's home.

The trial court properly denied the defendant's motion to suppress the evidence obtained in the search of the defendant's residence pursuant to the search warrant.

The judgment is affirmed.

In this opinion the other judges concurred.