## STATE OF CONNECTICUT *v.* EDWARD F. JOHNSON
## (10015)

LANDAU, FREEDMAN and CRETELLA, Js.

Argued April 2—decision released August 25, 1992

*Mario Paul Mikolitch,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Russell P. Zenter,* deputy assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Edward F. Johnson, was convicted, after a trial by jury, of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both in violation of General Statutes § 14-227a (a) (1) and of evading responsibility in violation of General Statutes § 14-224 (b). On appeal, the defendant claims that the trial court improperly (1) denied his motion to dismiss, which claimed that a peace officer does not have probable cause to effectuate a warrantless arrest for a misdemeanor committed out of that officer's presence, (2) failed to permit him to testify regarding his personal history and background, (3) precluded the defendant from introducing evidence of events that allegedly occurred at the police station subsequent to his arrest and failed to conclude that the state's failure to furnish this evidence violated *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), (4) charged the jury that it could consider the defendant's refusal to submit to a breathalyzer test in determining his guilt or innocence and that it was not necessary that the defendant know that the automobile collision he was involved in had caused damage to property, and (5) denied the defendant's motion for a new trial.[1] He also claims that he was denied his constitutional right to a fair trial because the trial court was biased against him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 23, 1990, Catherine Mangels was driv-

---

[1] The defendant properly preserved these claims for appellate review by taking exceptions to the court's rulings and instructions.

ing her car on Route 1 in Westbrook when it was struck by a car driven by the defendant. As a result of the collision, the cars became hooked together. Robert Pandora, who had been driving behind Mangels and had witnessed the collision, helped unhook the two cars. Pandora then drove Mangels' car into the parking lot of a nearby restaurant.

The defendant drove his car to the back of the restaurant lot. Pandora got out of Mangels' car, went to where the defendant had driven, and told him that a bystander had called the police. The defendant responded that he would not wait for the police, and then tried to leave the restaurant lot. The defendant was having trouble getting his car into gear, so Pandora reached into the defendant's car, turned off the ignition and removed the keys. Pandora went into the restaurant with the keys, and the defendant followed him in an unsuccessful attempt to retrieve his keys. When the police arrived, Pandora was walking out of the front door of the restaurant with the defendant behind him. The defendant, upon seeing the police, retreated into the restaurant bathroom and locked himself in a bathroom stall.

Pandora led Trooper Michael Polansky of the state police to the bathroom the defendant had just entered. Polansky identified himself and asked the defendant to come out of the stall. After refusing several times, the defendant finally staggered out. The defendant smelled of alcohol, had bloodshot eyes and was slurring his speech. Pandora identified the defendant as the operator of one of the cars involved in the collision. Polansky asked the defendant if he had been involved in the collision and the defendant replied that he had not. Polansky then asked the defendant to take a number of field sobriety tests. After the defendant refused to take the requested tests, Polansky arrested him without a warrant.

On the way out of the restaurant, the defendant acknowledged that he was the owner of one of the cars that had been involved in the collision. At the police station, Polansky asked the defendant to take a breathalyzer test. He refused. The jury subsequently convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and of evading responsibility.

I

The defendant first claims that the trial court improperly denied his motion to dismiss. In his motion, the defendant claimed that a peace officer does not have probable cause to effectuate a warrantless arrest for a misdemeanor committed outside the presence of that officer. The defendant argues that General Statutes § 54-1f (a),[2] which governs warrantless misdemeanor arrests and provides in pertinent part that peace officers "shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others," expands the common law rule for misdemeanor arrests, which stated that a person could not be arrested for a misdemeanor committed outside the officer's presence. This expansion, the defendant claims, violates the fourth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution.

The state argues that the United States Supreme Court's decision in *United States* v. *Watson,* 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976), which held that the fourth amendment imposes no warrant requirement for felony arrests occurring outside the

---

[2] General Statutes § 54-1f (a) "makes no distinction between misdemeanors and felonies, but defines and prescribes the limitations upon peace officers in making arrests without a warrant 'for any offense.'" *Sims* v. *Smith,* 115 Conn. 279, 282, 161 A.2d 392 (1932).

home, also applies to warrantless misdemeanor arrests outside the home.[3]

The defendant correctly notes that the common law rule was that a person could not be arrested for a misdemeanor unless it was a breach of the peace committed in the presence of the arresting officer. 2 W. LaFave, Search and Seizure § 5.1 (b), pp. 396–97. Connecticut enlarged this rule by statute to permit warrantless arrests "for any offense . . . on the speedy informa-

---

[3] The state notes that the federal courts that have examined the meaning of the fourth amendment have held that it imposes no warrant requirement for misdemeanor arrests occurring outside the officer's presence. See *Field* v. *South Houston, Texas,* 922 F.2d 1183, 1189 (5th Cir. 1991) (public intoxication and public exposure); *Barry* v. *Fowler,* 902 F.2d 770, 772 (9th Cir. 1990) (vehicle tampering); *Boucher* v. *Southbridge,* 679 F. Sup. 131, 133 (D. Mass. 1988) (driving under the influence); *Wilson* v. *Walden,* 586 F. Sup. 1235, 1237 (W.D. Mo. 1984) (violation of conservation laws).

A number of state courts have come to the same conclusion. See *People* v. *Burdo,* 56 Mich. App. 48, 51, 223 N.W.2d 358 (1974) (driving under the influence); *Bucyrus* v. *Williams,* 46 Ohio App. 3d 43, 45, 545 N.E.2d 1298 (1986) (driving under the influence); *State* v. *Lee,* 763 P.2d 385, 387 (Okla. Crim. App. 1988) (assault and battery); *Thompson* v. *Commonwealth,* 10 Va. App. 117, 121, 390 S.E.2d 198 (1990) (statutory burglary and grand larceny).

The Connecticut Supreme Court has not addressed this issue. See *State* v. *Santiago,* 26 Conn. App. 481, 482 n.2, 602 A.2d 40, cert. granted, 221 Conn. 920, 608 A.2d 686 (1992). In *Santiago,* the defendant was arrested on the porch of his home, without a warrant and on the speedy information of others, for the misdemeanor of threatening, in violation of General Statutes § 53a-62. The issue was whether the porch was part of the defendant's home, thereby precluding a warrantless arrest; *Welsh* v. *Wisconsin,* 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984); or not a part of his home, which would validate the arrest under the fourth amendment if supported by probable cause; *United States* v. *Watson,* 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

Because the court concluded that the porch was part of the defendant's house, the warrantless misdemeanor arrest was invalid under the fourth amendment. The court, therefore, did not reach the question of whether the warrantless arrest would have been upheld under General Statutes § 54-1f (a) had it been made in a public place. *State* v. *Santiago,* supra, 485–86 n.6.

tion of others." *Sims* v. *Smith*, 115 Conn. 279, 282, 161 A. 392 (1932). The defendant suggests that such "enlargement may raise constitutional issues."

Although the defendant asserts this claim on both federal and state constitutional grounds, he does not provide any analysis of either the federal or state constitutional claims. Therefore, we consider his constitutional claims to be abandoned and therefore need not address them. *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991).

## II

The defendant next claims that the trial court improperly failed to permit the defendant to testify regarding his mother's name and where he lived for the first eighteen years of his life. We disagree. At trial, the state objected to the introduction of this evidence on the basis of relevance. In an offer of proof outside the presence of the jury, the defendant argued that this information was relevant to his character. The trial court sustained the state's objection and the defendant properly excepted.

The rule regarding the admission of character evidence by a defendant is well established. The defendant may introduce only "such specific traits of his character as are involved in the crime or crimes as charged" and not evidence of his "general good character." *State* v. *Blake*, 157 Conn. 99, 103–104, 249 A.2d 232 (1968). The evidence the defendant attempted to introduce bore no relation to the crimes charged. Therefore, we conclude that the trial court properly precluded the defendant from introducing this evidence.

## III

The defendant next claims that the trial court improperly precluded him from introducing evidence concerning events that allegedly occurred subsequent to his

arrest, and that the state's failure to provide the defendant with this evidence violated the rule of *Brady* v. *Maryland,* supra, 83. The defendant attempted to introduce photographs depicting injuries that he allegedly suffered during his postarrest detention at the hands of state troopers and testimony concerning a discussion he had with Polansky, five weeks after the arrest, about a videotape allegedly made of this incident. In an offer of proof, the defendant argued that he had a "minor breakdown" and was unable to remember the accident due to these injuries and that the injuries were relevant because they bore on whether he knew of his involvement in the accident, which is an element of the crime of evading responsibility.[4] The trial court ruled that this purported injury lacked relevance because it occurred after the accident and could not have been the cause of his breakdown. We agree with the trial court's ruling.

"A trial court has wide discretion in its rulings on relevancy." *State* v. *Williams,* 27 Conn. App. 654, 664, 610 A.2d 672 (1992); *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). "One fact is relevant to another fact whenever according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." *State* v. *Williams,* supra, 664–65; *State* v. *McClendon,* 199 Conn. 5, 8–9, 505 A.2d 658 (1986). "All that is required is that the evidence tend to support a relevant fact." *State* v. *Williams,* supra, 665; *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987).

Our review of the record indicates that this evidence does not render any other relevant fact either certain or more probable, and has no relationship to the crime

[4] See part IV, section B, infra.

of evading responsibility. We also note that the defendant attempted to leave the scene of the accident when Pandora told him that a bystander had called the police, indicating that the defendant was aware of his involvement in the accident. We conclude, therefore, that the trial court properly precluded the defendant from introducing this evidence.

The defendant also claims that the state's failure to furnish this evidence prior to trial violated *Brady* v. *Maryland*, supra. We disagree. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id., 87. Because we conclude that this evidence was neither relevant nor material, the defendant's claim is without merit.

### IV

The defendant next asserts that the trial court improperly charged the jury that it was not necessary that the defendant knew that his accident caused damage to property to be guilty of evading responsibility, and that the jury could consider the defendant's refusal to submit to a breathalyzer test in determining his guilt or innocence. We disagree.

### A

General Statutes § 14-224 (b), evading responsibility, provides that "[e]ach person operating a motor vehicle who is knowingly involved in an accident which causes physical injury . . . to any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to the

owner of the injured or damaged property . . . ." The defendant argues that to be guilty of the crime of evading responsibility, the operator of a vehicle must know of his involvement in an accident *and* that the accident caused damage to property.[5] The defendant claims that "knowingly" modifies both "involved in an accident" and "damage to property." The state argues that "knowingly" modifies only "involved in an accident."

When a statute's meaning is ambiguous, "compelling principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results." *Turner* v. *Turner,* 219 Conn. 703, 712, 595 A.2d 297 (1991). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988).

Prior to 1957, the evading responsibility statute provided that "[e]ach person operating a motor vehicle who knowingly causes injury, whether or not resulting in death, to any other person or injury or damage to property shall at once stop" and render assistance. General Statutes (1949 Rev.) § 239. In 1957, the statute

---

[5] The defendant claims that Connecticut courts are divided on whether the state is required to prove that the defendant knew that the accident caused damage to property. The court in *State* v. *La Riviere,* 22 Conn. Sup. 385, 389, 173 A.2d 900 (1963), found that four elements were necessary to prove the crime of evading responsibility: (1) damage by the vehicle to the property of another, (2) knowledge by the driver of such damage, (3) failure of the driver to give his name, operator's license number and registration to the owner of the property and to report such damage to the police, and (4) operation of the vehicle. In *State* v. *Mulvey,* 3 Conn. Cir. Ct. 297, 213 A.2d 228, cert. denied, 153 Conn. 721, 212 A.2d 78 (1965), the court held that knowledge by the driver that the accident caused damage to property was not necessary.

This court is bound by neither the nonconstitutional Circuit Court; *State* v. *Hyatt,* 9 Conn. App. 426, 519 A.2d 612 (1987); nor the Superior Court. See *Rodia* v. *Tesco Corporation,* 11 Conn. App. 391, 397, 527 A.2d 721 (1987).

was amended to provide that "[e]ach person operating a motor vehicle who is knowingly involved in an accident which causes injury . . . or damage to property shall at once stop" and render assistance.

The effect of this statutory amendment has not been addressed by this court or our Supreme Court. The statutory change was, however, analyzed in *State* v. *Herbst,* 2 Conn. Cir. Ct. 236, 197 A.2d 550 (1963). While we are not bound by that court's decision; *State* v. *Hyatt,* 9 Conn. App. 426, 430, 519 A.2d 612 (1987); we agree with its interpretation and adopt it here.

In *Herbst*, the court, faced with a similar argument, noted the significance of the change in language between the 1949 statute—"knowingly causes injury . . . or damage to property"—and the 1957 statute— "knowingly involved in an accident which causes . . . damage to property"—and concluded that, aside from operation of the vehicle, "the prime element of the [crime] is being knowingly involved in an accident. . . . It is immaterial that the defendant [does] not know that he had caused damage to [property]." *State* v. *Herbst,* supra, 238–39. We agree.

Interpreting the statute as the defendant suggests would result in the defendant's having the means to avoid responsibility simply by allowing him to say that although he knew there was an accident, he did not know that it caused damage to property. Such a result is not reasonable and would indeed thwart the purpose of the statute. We hold, therefore, that the only knowledge required is knowledge that there has been an accident. We reject the defendant's interpretation and conclude that the trial court properly instructed the jury on the elements necessary to find a violation of General Statutes § 14-224 (b).

## B

The defendant next contends that the trial court improperly instructed the jury that it could consider the defendant's refusal to submit to a breathalyzer test in determining his guilt or innocence. We disagree.

General Statutes § 14-227a (f)[6] provides that a defendant's refusal to submit to such a test may be admissible if the refusal meets the procedural requirements set forth in General Statutes § 14-227b (b). The procedural requirements are that the defendant must be (1) apprised of his *Miranda*[7] rights, (2) asked to submit to a blood, breath or urine test, (3) given a reasonable opportunity to contact an attorney prior to the performance of the test, (4) informed that his operating privileges will be suspended if he refuses to submit to the test, and (5) informed that refusal to submit to the test shall be admissible and may be used against him in any subsequent criminal prosecution in accordance with § 14-227a (f).

Our review of the record indicates that the arresting officer fulfilled each of these requirements. First, Polansky testified that he read the defendant his *Miranda* rights from a card carried by the state police to ensure compliance by arresting officers. Second, Polansky testified that he also read to the defendant from a card that listed the requirements of General

---

[6] General Statutes § 14-227a (f) provides: "In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

[7] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Statutes § 14-227b (b). The defendant refused to sign the card indicating that he understood these requirements, but Polansky noted the defendant's refusal on the card, and signed his name, which was witnessed by another officer who also testified at trial. Moreover, Polansky testified that he personally looked up and dialed the phone number of the defendant's attorney but was unable to contact him. Because the officer met the procedural requirements of § 14-227b (b), the trial court properly instructed the jury as to any inference that may be drawn from the defendant's refusal to submit to the breathalyzer test.

## V

The defendant's next claim is that the trial court improperly denied his motion for a new trial. We disagree.

"Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. Although our decisions have not been entirely consistent in delineating the appropriate standard for appellate review, we have most often characterized the action of the trial court as an exercise of its legal discretion and have accordingly confined our role to a determination of whether there has been an abuse of discretion. . . . Although we have occasionally taken a broader view . . . we now conclude that the appropriate standard of review is abuse of discretion." (Citations omitted.) *State* v. *Hammond,* 221 Conn. 264, 269–70, 604 A.2d 793 (1992).

Our review of the record indicates that the trial court did not abuse its discretion by refusing to grant the defendant's motion for a new trial. We, therefore, affirm the trial court's decision.

## VI

The defendant's final claim is that the trial court was biased against the defendant and that he was consequently denied his constitutional right to a fair trial. We disagree.

"Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. U.S. Const., amend. XIV; Conn. Const., art. I, § 8; *Lisenba* v. *California,* 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 166 [1941]; *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct. 1010, 2 L. Ed. 2d 1075 [1958]. In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 [1942]; *Quercia* v. *United States,* 289 U.S. 466, 469, 53 S. Ct. 698, 77 L. Ed. 1321 [1933]." (Internal quotation marks omitted.) *State* v. *Gordon,* 197 Conn. 413, 424D–25, 504 A.2d 1020 (1985). The defendant is entitled to a new trial only in situations where he can show that the trial court's actions resulted in prejudice to the defendant. Id., 425.

Our review of the record clearly indicates that the trial court was not biased against the defendant. The trial court was evenhanded in its evidentiary rulings. Furthermore, while the defendant lists eight instances in which he claims that the trial court was biased, he offers absolutely no indication of how this has prejudiced him. The defendant's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.